UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

**DONALD COMEAUX**

Plaintiff,

vs.

**ANGI TRAHAN, COLDWELL BANKER REAL ESTATE, LLC, PELICAN REAL ESTATE, INC. d/b/a COLDWELL BANKER PELICAN REAL ESTATE, FEDERAL HOME LOAN MORTGAGE CORPORATION,**

Defendants.

CASE NO:

DEMAND FOR JURY TRIAL

## COMPLAINT

Plaintiff DONALD COMEAUX, individually, by and through his undersigned counsel, appears and hereby sues the Defendants, ANGI TRAHAN; COLDWELL BANKER REAL ESTATE, LLC; PELICAN REAL ESTATE D/B/A COLDWELL BANKER PELICAN REAL ESTATE; FEDERAL HOME LOAN MORTGAGE CORPORATION, and in support of this cause of action, states the following:

### PARTIES

1. At all times material, Donald Comeaux ("Comeaux") was a person of the age of full majority domiciled in New Iberia, Louisiana. The events described herein took place in Lafayette, Louisiana, which is located in Lafayette Parish, Louisiana.

2. Defendant Pelican Real Estate, Inc., d/b/a Coldwell Banker Pelican Real Estate ("Pelican") is a domestic corporation doing business in Louisiana, domiciled at 806 E. St. Mary, Lafayette, Louisiana 70503. Defendant Pelican is a real estate brokerage firm in the business of offering properties for sale to the public.

1

3. At all times material, defendant Angi Trahan ("Trahan") was a real estate agent employed by, and acting as agent for, Pelican. Defendant Pelican hired, trained, and supervised Defendant Trahan.

4. Defendant Coldwell Banker Real Estate, LLC ("Coldwell Banker"), a residential and commercial real-estate firm, is a foreign corporation registered in Sacramento, California, and doing business in Louisiana. Coldwell Banker is domiciled at 2730 Gateway Oaks Dr., Ste. 100, Sacramento, California 95833.

5. Defendant Federal Home Loan Mortgage Corporation, d/b/a Freddie Mac ("Freddie Mac"), is a foreign corporation doing business in Louisiana and domiciled at 8200 Jones Branch Drive, McLean, Virginia 22102. Defendant Freddie Mac is in the business of offering mortgage loans. Defendant Freddie Mac's mortgage loans are collaterally secured with real estate.

6. Defendant Pelican listed a house located at 227 Gina Drive, Duson, Louisiana 70529 ("the Property") on its website and held it out for sale to the public. Defendant Pelican, acting through Defendant Trahan and on behalf of Defendants Freddie Mac and Coldwell Banker, rejected Mr. Comeaux's offer to buy the Property, despite the fact that his offer was higher than that of the offer that Pelican eventually accepted. Further, Mr. Comeaux's offer was rejected despite his prequalification for financing and deposit of earnest money.

7. Jurisdiction is conferred upon this Court by 28 U.S.C. §1331, federal question jurisdiction, 28 U.S.C. §1343, civil rights jurisdiction and 42 U.S.C. §§ 3613(a), which allows for enforcement of the Fair Housing Act by private persons.

8. Venue is within the Western District of Louisiana pursuant to 28 U.S.C. §1391(b) because the claims arose in this judicial district.

## FACTS

9.  227 Gina Drive, Duson, Louisiana 70529 is immovable property located in Lafayette Parish, Louisiana, and is a dwelling subject to the federal Fair Housing Act, 42 USC § 3601, *et seq*. Defendant Pelican offers properties for sale to the public through its website, physical brochures and advertisements, and through its local branches.

10. At all relevant times, Defendant Pelican Real Estate and Defendant Coldwell Banker were indistinguishable, sharing the same logo, the same "Coldwell Banker" name, as well as the same color schemes, advertising platform and other trademarks. Mr. Comeaux reasonably believed that Defendant Pelican was part of Defendant Coldwell Banker. On information and belief, Defendant Pelican was acting as an agent for Coldwell Banker in the sale of the Property.

11. At all times material herein, Defendant Freddie Mac owned the Property. Defendant Freddie Mac hired Defendants Pelican and Coldwell Banker as agents to represent it in the sale of the Property.

12. On information and belief, at all relevant times material to this lawsuit, Defendant Freddie Mac had authority and control over Defendants Trahan, Pelican, and Coldwell Banker. Defendant Freddie Mac had authority to direct Defendants Trahan, Pelican, and Coldwell Banker to accept or reject offers to purchase the Property. Defendant Freddie Mac had the authority to dismiss, at will, Defendants Trahan, Pelican, and Coldwell Banker from their respective agency relationships.

13. Defendants Trahan, Pelican, and Coldwell Banker, in the course and scope of their agency, had the discretion to reject offers to purchase the Property.

14. Defendant Trahan represented Defendants Pelican, Coldwell Banker, and Freddie Mac in the sale of the Property. At all relevant times, Defendant Trahan was acting as an agent for Defendants Pelican, Coldwell Banker, and Freddie Mac. Defendant Trahan engaged in the conduct herein in her capacity as the agent of Defendants Pelican, Coldwell Banker, and Freddie Mac and in the course and scope of her agency. Mr. Comeaux reasonably believed that Defendant Pelican was acting as an agent of Defendants Coldwell Banker and Freddie Mac. On information and belief, at all relevant times material to this lawsuit, Defendants Pelican and Coldwell Banker had the authority to dismiss Defendant Trahan from her agency.

15. On or about September 25, 2007, Defendant Pelican listed the Property as available for purchase on its website. The Property was listed as available for purchase until October 17, 2007, when Defendant Pelican removed the advertisement.

16. Defendant Freddie Mac listed the Property for sale, independently, through its website HomeSteps. On information and belief, the Property remained available on the HomeSteps website until sometime after October 17, 2007.

17. Defendant Freddie Mac, through its website, listed the Property for sale at a price of $57,900. Defendant Pelican also listed the Property for sale on its website at the same price of $57,900.

18. On or about October 11, 2007, Defendant Trahan reported to Defendant Freddie Mac that a "Mr. Rodriguez" had made an oral offer to purchase the Property for a price of $52,000. On or about October 12th, 2007, Defendant Freddie Mac directed Defendant Trahan to make an oral counter-offer to Mr. Rodriguez, for a sale price of $55,000. Three days later, on or about October 15th, Defendant Trahan reported to Defendant Freddie Mac that Mr. Rodriguez was willing to accept Freddie Mac's oral counter-offer. Defendant Freddie Mac did not ask for

proof of Mr. Rodriguez' pre-approval for mortgage financing until October 16th. Further, Defendants did not enter into a contract with Mr. Rodriguez for sale of the Property until October 22nd, 2007.

19.   On or about October 14, 2007, before Mr. Rodriguez accepted Freddie Mac's verbal counteroffer, and before Mr. Rodriguez entered into a contract with Defendants to purchase the Property, Mr. Comeaux learned of the Property's availability through Pelican's and Freddie Mac's websites.

20.   On the morning of October 14, 2007, Mr. Comeaux visited the Property. While at the Property, Mr. Comeaux called Pelican's office to inquire about the status of the Property and to express his interest in purchasing it. When no one answered his call, Mr. Comeaux left a message on Pelican's voicemail machine.

21.   Mr. Comeaux is an African-American male. Further, Mr. Comeaux speaks with a distinctive African-American accent. On information and belief, any person who heard Mr. Comeaux's voicemail message would have known his race.

22.   Mr. Comeaux placed several more calls to Pelican's office on October 14, 2007. No one answered the calls, and Pelican's answering machine did not pick up the calls, despite the fact that Mr. Comeaux was able to leave a message earlier that day.

23.   On the afternoon of October 14, 2007 Mr. Comeaux's real estate agent, Marion LeDay, faxed a signed document titled "LOUISIANA RESIDENTAL AGREEMENT TO BUY OR SELL" to Defendant Trahan at Defendant Pelican's office. This document was an offer to purchase the Property at the full listing price of $57,900.

24.   At the time that his agent faxed the October 14 offer, Mr. Comeaux was pre-approved for a mortgage up to $213,750 from ExpressPath through InstaMortgage.com. On

October 14th, 2007, the same day he submitted the aforementioned offer to purchase the Property, Mr. Comeaux faxed documentation of his preapproval to Defendant Trahan.

25. Also on October 14, 2007, Mr. Comeaux's agent faxed a copy of a $1000 check to Defendant Trahan. The faxed check was signed by Mr. Comeaux, and was intended to be an earnest money deposit on the Property.

26. At approximately 3:30 pm on October 15, 2007, Mr. Comeaux's agent, Marion LeDay, called Defendant Trahan to inquire about the status of Mr. Comeaux's offer. Defendant Trahan told Mr. LeDay at that time that a contract was pending on the Property and that Mr. Comeaux's offer would be rejected. Defendant Trahan made this statement prior to Defendants' executing a contract with Mr. Rodriguez for sale of the Property.

27. Also on October 15, 2007, Defendant Trahan told Mr. LeDay that she would check to see if Freddie Mac would accept Mr. Comeaux's offer as a "back-up." Defendant Trahan deemed Mr. Comeaux's offer as a "back-up" prior to reporting Mr. Comeaux's offer to Coldwell Banker or Freddie Mac. By making this statement, Defendant Trahan effectively denied Mr. Comeaux's offer.

28. Gena Shelton Dunn worked for Pelican and negotiated offers and contracts on Pelican's behalf.

29. On information and belief, Defendant Trahan did not make Ms. Dunn aware of Mr. Comeaux's offer until October 16, 2007.

30. On or about October 16, 2007, Defendant Trahan asked Mr. Rodriguez to demonstrate that he had been pre-approved for a loan. Also on or about that date, Defendant Trahan informed Freddie Mac of Mr. Comeaux's offer to purchase the Property.

31. On or about October 17, 2007, Freddie Mac approved entering into a contract with Mr. Rodriguez. Also on or about October 17, Freddie Mac directed Defendant Trahan to inform Mr. Comeaux that his offer was rejected. These actions were taken despite the fact that Mr. Comeaux had made an offer to purchase the Property for the full listing price, was pre-approved for financing, and had tendered an earnest money deposit.

32. On information and belief, Mr. Rodriguez and Defendant Freddie Mac executed the contract for sale over a nine-day period between October 31st, 2007.

33. At all relevant times, Mr. Comeaux's offer to purchase the Property was for the full listing price while Mr. Rodriguez's was below the listing price.

34. Between October 14th and October 16, 2007, Defendants knew that Mr. Comeaux had been pre-approved for mortgage financing. Between October 14th and October 16, 2007, Defendants were not aware of if Mr. Rodriguez had any financing.

35. At all relevant times, the housing opportunity at issue remained available until final execution of the various contract documents, which occurred on October 31, 2007.

36. On October 22, 2007, Mr. Comeaux filed a complaint with the United States Department of Housing and Urban and Development ("HUD"), alleging violations of the federal Fair Housing Act. HUD subsequently referred the complaint to the Louisiana Department of Justice ("LADOJ") for investigation.

37. On April 5, 2010, after investigating Mr. Comeaux's complaint, the LADOJ issued a Determination of Reasonable Cause in which the LADOJ found that there was reasonable cause to find that the Defendants committed discriminatory housing practices.

## FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS:

### Discriminatory Refusal to Sell

38. Plaintiff re-alleges and reincorporates the facts and allegations contained in paragraphs 1 through 37 as if fully set forth herein.

39. 42 U.S.C. § 3604 (a) prohibits the refusal to sell a dwelling, based on race, after a prospective buyer makes a bona fide offer.

40. Defendant Trahan's October 15, 2007 rejection of Mr. Comeaux's full-price offer, while the Property remained otherwise available, constituted a discriminatory refusal to sell, in violation of the Fair Housing Act, 42 USC § 3601, *et seq*.

41. Defendants Pelican's and Coldwell Banker's rejection of Mr. Comeaux's full-priced offer by their agent, Defendant Trahan, while the Property remained otherwise available, constituted a discriminatory refusal to sell, in violation of 42 USC § 3601, *et seq*.

42. Defendant Freddie Mac's rejection of Mr. Comeaux's full-priced offer by their agents, Defendants Coldwell Banker, Pelican and Trahan, while the Property remained otherwise available, constituted a discriminatory refusal to sell, in violation of 42 USC § 3601, *et seq*.

## SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS:

### False Denial of Availability of Dwellings Based on Race

43. Plaintiff re-alleges and reincorporates the facts and allegations contained in paragraphs 1 through 37 as if fully set forth herein.

44. 42 U.S.C. § 3604 (d) prohibits the false denial of availability of dwellings based on race.

45. Defendant Trahan's rejection, on behalf of herself, and as the agent of Defendants Pelican, Coldwell Banker, and Freddie Mac, of Mr. Comeaux's offer on October 15th, 2007,

while the Property remained otherwise available, constituted a discriminatory false denial of availability of housing in violation of 42 USC § 3601, *et seq*.

## THIRD CAUSE OF ACTION

**Negligent Hiring, Training, and Supervision Against Defendants Pelican and Coldwell Banker**

46. Plaintiff re-alleges and reincorporates the facts and allegations contained in paragraphs 1 through 37 as if fully set forth herein.

47. Defendants Pelican and Coldwell Banker, as real-estate professionals in the business of selling residential properties, owed plaintiff, as a potential buyer, a duty to use reasonable care in the hiring, training, and supervision of real-estate agents employed at their offices. Defendants Pelican and Coldwell Banker failed to use reasonable care in the training and supervision of Defendant Trahan.

48. It was foreseeable that Defendants' negligent conduct would cause Mr. Comeaux to be discriminated against and that Mr. Comeaux would be injured by defendants' conduct.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff DONALD COMEAUX, prays for the following relief:

49. Declaring that Defendants' discriminatory practices violate the Fair Housing Act, as amended, 42 U.S.C §§ 3601, *et seq*.

50. Enjoining Defendants, their agents, employees, and successors, and all other persons in the active concert or participation with them from discriminating on the basis of race, against any person in the sale of a dwelling;

51. Requiring appropriate changes in policy and monitoring in order to ensure compliance with the mandates of the federal Fair Housing Act, as amended, 42 U.S.C §§ 3601, *et seq*.

52. Awarding Plaintiff compensatory damages from Defendants, jointly and severally, and punitive damages individually, in amounts to be determined at trial, plus interest from the date of judgment on his Fair Housing claims;

53. Awarding Plaintiff's reasonable attorney fees, costs and expenses incurred in prosecuting this action; and

54. Granting Plaintiff such other relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial on the merits by jury, pursuant to Fed. R. Civ. P. 38.

DATED this 29th day of March, 2012

Respectfully submitted,

*/s/ Aurora Bryant*
AURORA BRYANT, La. Bar No. 33447
GREATER NEW ORLEANS FAIR
HOUSING ACTION CENTER
404 S. Jefferson Davis Parkway
New Orleans, LA 70119
(504) 596-2100
E-mail: abryant@gnofairhousing.org

Attorney for Donald Comeaux